1
2
3               UNITED STATES DISTRICT COURT
4                    DISTRICT OF NEVADA
5                           * * *
6    FRANK DePETRO,                        Case No. 2:22-cv-00817-MMD-NJK
7                        Plaintiff,                    ORDER
8          v.
9    MICHAEL MINEV, *et al.*,
10                       Defendants.
11
12

13   **I.      SUMMARY**

14          *Pro se* plaintiff Frank DePetro, who is incarcerated by the Nevada Department of

15   Corrections ("NDOC") at High Desert State Prison ("HDSP"), brings this action against

16   four HDSP employees for their failure to address his chronic back pain. Before the

17   Court are the parties' cross-motions for summary judgment[1] (ECF Nos. 28, 40

18   ("Motions")), Plaintiff's motions for leave to file supplemental exhibits (ECF Nos. 36, 64),

19   and Defendants' motions to seal (ECF Nos. 41, 45). For the following reasons, the

20   Court will deny Plaintiff's Motion, deny Defendants' Motion as to the Eighth Amendment

21   claims and grant Defendants' Motion as to the Due Process claims, grant DePetro's

22   motions for leave to file, and grant in part Defendants' motions to seal.

23   **II.     BACKGROUND**

24          The following facts are undisputed unless otherwise noted.

25          **A.  Medical Care and Kites**

26

27          [1]The Court treats DePetro's motion titled "Plaintiff's Motion to find in Plaintiffs
     favor do to Evidance in Exhibits 1-5" (ECF No. 28) as a motion for summary judgment.
28   The Court has also reviewed the parties' responses and replies. (ECF Nos. 44, 49, 51,
     53, 56.)

1   Frank DePetro, an inmate at HDSP, began filing inmate medical request forms

2   ("kites") regarding his severe back pain in August 2020. (ECF No. 28 at 22.) DePetro

3   sent three kites complaining of "really bad" back pain in 2020, and NDOC responded to

4   each saying that DePetro would be placed on a medical sick call list. (*Id.* at 22-24.)

5   DePetro sent another kite in April 2021 alerting HDSP medical staff that he was in

6   "excruciating pain" from the lower right side of his back down through his buttocks and

7   received the same response—that he would be placed on sick call—yet again. (ECF

8   No. 42-2 at 2.)

9   DePetro claims he did not see a provider for this issue for another eight months;

10   however, his medical chart does note that he was seen for complaining of back and

11   neck pain on September 23, 2020.[2] (ECF Nos. 21 at 3; 46-4 at 4-5 (sealed).) DePetro

12   also filled prescriptions for ibuprofen at least five times between September 2020 and

13   March 2021. (ECF No. 42-3 at 7, 9-12, 16 (sealed).)

14   In December 2021, DePetro reinitiated filing kites about his back pain. (ECF No.

15   28 at 25-26.) NDOC responded to DePetro's December 8th kite that he was already on

16   the provider's list for this issue and that he would be seen when his turn arrived. (*Id.* at

17   25.) NDOC similarly responded to the December 30th kite that DePetro was scheduled

18   and would be notified the day of his appointment. (*Id.* at 26.)

19   During the early morning of December 25, 2021,[3] DePetro's back seized and

20

21   [2]Defendants assert that DePetro was examined by medical staff on September
23, 2020; December 11, 2020; February 2, 2021; March 26, 2021; and September 1,

22   2021. (ECF No. 53 at 3.) But only the September 23rd visit addressed his back pain.
(ECF No. 42-4 at 6 (sealed).) The others concerned different ailments and were often in

23   specialized clinics, although his medical chart for December 11, 2020, states that there
were "no other complaints noted." (*Id.*)

24   DePetro responds that he was never seen by "sick call" for his back pain, as
evidenced by the lack of his signature on sick call sign in sheets for September 23,

25   2020; February 2, 2021; and December 27, 2021. (ECF Nos. 64 at 2; 65 at 2-3.) He
further asserts that he has not received the sick call sign-in sheets for December 11,

26   2020, or September 1, 2021, but his name is not on those lists either. (ECF No. 64 at 2.)

27   [3]Defendants do not dispute DePetro's allegations about this incident, but they do
not actively affirm them either. (ECF No. 40 at 3 (stating that "DePetro alleges" the

28   following events, without providing any facts of their own).) Additionally, the handwritten

"went completely out." (ECF No. 21 at 4.) DePetro laid on his cell floor for hours until his cellmate alerted correctional officers, who in turn called medical staff. (*Id.*) Nurse Dennis Tamban responded and, upon hearing that DePetro was in excruciating pain and could not move, told DePetro to "get use[d] to it" because it would "be a while before [he saw] a provider." (*Id.*) Tamban also said, "There is nothing I can do for you at this time! It's Christmas and no one is here to help!" (ECF No. 49 at 34.) He then overhand threw a bottle of ibuprofen at DePetro and walked away. (ECF Nos. 21 at 4; 49 at 34.) The correctional officers had opened DePetro's cell so that he could be examined, but Tamban never entered to check DePetro's condition. (ECF Nos. 21 at 5; 49 at 33-34.)

NDOC medical staff examined DePetro two days later. (ECF No. 46-4 at 4-5 (sealed).) During this visit, they diagnosed DePetro with lumbago, ordered an x-ray of his lumbar spine, placed him on the sick call list, and noted that he would receive analgesic cream. (*Id.*) The provider also noted that DePetro had experienced "severe back pain" on December 25. (*Id.*) Medical staff saw DePetro again on January 25, 2022. (*Id.* at 5.) The medical provider noted his "severe back pain" and reiterated that DePetro required an x-ray and pain medication. (*Id.*) DePetro filled his first script for naproxen sodium a few days later. (ECF No. 46-5 at 7.)

After another four weeks, DePetro's back was x-rayed. (ECF No. 46-4 at 6 (sealed).) The reviewing physician found that DePetro's spine was normally aligned but that it showed minimal degenerative changes, "including tiny marginal osteophytes and sclerotic changes of the lower facet joints." (*Id.*) That same month, DePetro's cellmate wrote an affidavit stating that DePetro's back pain made it difficult for DePetro to walk, bend over, clean his body, and even get out of bed. (ECF No. 49 at 35.)

Naproxen sodium was dispensed to DePetro two more times in the spring of

---

notes in the medical documents are often difficult to decipher. Defendants rely on these records to support their Motion, but they have not offered any declaration from the authors of these notes to clarify the written texts.

1    2022.[4] (ECF No. 46-5 at 4, 6 (sealed).)

2         In late May 2022, HDSP medical staff saw DePetro for his back pain again. (ECF

3    No. 46-4 at 5 (sealed).) DePetro's on-and-off chronic pain was now radiating down to

4    his big toes, and a tingly pain traveled up to his neck. (*Id.*) An exam showed that it was

5    painful for DePetro to flex 45 degrees and on "SB," likely referring to side bending.[5] (*Id.*)

6    Naproxen sodium did not manage his pain. (*Id.*) The provider noted that the x-ray of

7    DePetro's spine showed "mild DJD"—likely meaning degenerative joint disease[6]—and

8    that DePetro may qualify for back surgery. (*Id.*) DePetro's prescription was changed to

9    meloxicam, and he filled the prescription twice, in both June and July 2022. (ECF No.

10   46-5 at 2-3 (sealed).)

11        DePetro received another examination for his back pain in December 2022, as

12   he was still experiencing a chronic "shooting" low back pain that was not responding to

13   his new medication. (ECF No. 65 at 5.) The pain radiated through his full right side, from

14   his lumbar area to his buttocks and up his leg. (*Id.*) The medical provider performed a

15   straight leg raise test,[7] which showed "[nerve[8]] permanent ___ ®." (*Id.*) The provider

16   once again noted that DePetro's x-rays showed degenerative changes and diagnosed

---

17   [4]Defendants allege that DePetro was given naproxen sodium a third time, but
18   this is not evident from the proffered medical records. (ECF No. 46-5 (sealed).)

19        [5]The Court's own research revealed that medical professionals use 'SB' as an
     abbreviation for side bending. *See* Fed. R. Evid. 201; Mun Keong Kwan et al., *Prediction
20   of Curve Correction Using Alternate Level Pedicle Screw Placement in Patients With
     Adolescent Idiopathic Scoliosis (AIS) Lenke 1 and 2 Using Supine Side Bending (SB)
21   and Fulcrum Bending (FB) Radiograph*, 40 Spine 1605 (2015), https://perma.cc/23AE-
     HCST.

22        [6]The Court's research also revealed that 'DJD' is a medical abbreviation for
23   degenerative joint disease. *See* Fed. R. Evid. 201; *Degenerative Joint Disease (DJD) of
     the Spine*, MedStar Health, https://perma.cc/DE4W-ZNZL.

24        [7]The Court's research revealed that 'SLR' is an abbreviation for straight leg raise,
25   one of "the most commonly applied physical tests on patients with sciatica." Janne
     Pesonen et al., *Extending the Straight Leg Raise Test for Improved Clinical Evaluation
26   of Sciatica: Reliability of Hip Internal Rotation or Ankle Dorsiflexion*, 22 BMC
     Musculoskeletal Disorders 303 (2021), https://perma.cc/7R5B-CR6R; *see also* Fed.
27   R. Evid. 201.

28        [8] The writing is not entirely legible but appears to be "nerve."

4

1   DePetro with "Osteoarthritis LS spine." (*Id.*)

2   About four months later in April 2023, DePetro filed yet another kite about his

3   back pain, alerting NDOC that his toes were now tingly and numb. (ECF No. 28 at 27.)

4   NDOC responded that he would be seen in approximately six to nine weeks. (*Id.*) The

5   next month, DePetro's cellmate wrote an affidavit stating that DePetro's back pain

6   limited his mobility so much that the cellmate had to help DePetro sit up, get water, and

7   get off the toilet, despite having limited mobility himself. (ECF No. 36 at 10.) The

8   cellmate also observed DePetro's "constant suffering in pain and him pleading [with]

9   nurses at pill call to help him get in to see a doctor." (*Id.*) DePetro continues to suffer

10  bouts of severe pain. (ECF No. 21 at 4.)

11  **B. Grievance**

12  On June 22, 2021, DePetro submitted an emergency grievance stating that he

13  was experiencing "excruciating pain" from his lower back to "all the way down [his]

14  legs." (ECF No. 28 at 15.) Eleven weeks later, NDOC staff denied the emergency

15  grievance because it was "not an emergency per AR 740" and, for the fifth time, placed

16  DePetro on the sick call list. (*Id.*) DePetro formally disagreed two weeks later. (*Id.*)

17  DePetro then submitted an informal grievance about the same problems on

18  November 4, 2021.[9] (ECF No. 44-2 at 6.) After hearing no response for three months,

19  DePetro filed a Second Level grievance stating that his informal grievance had

20  automatically moved on to the First Level on December 27, 2021. (ECF Nos. 40-1 at 6,

21  12; 49 at 19.) Though the Second Level grievance is incomplete, given the included

22  information and timing of its filing—45 days after December 27, 2021—it appears that

23  DePetro was noting that his grievance had progressed to the second level, since

24  NDOC's 45-day response period had lapsed again. (ECF Nos. 40-1 at 6, 14; 49 at 19,

25  21.) Scally responded two months later that DePetro's grievance was denied because

26

27  ⁹DePetro's original grievance is not in the record, but NDOC and DePetro's
    responses indicate that he was complaining of inadequate medical treatment for his
28  chronic back pain. (ECF Nos. 28 at 17-18; 49 at 19-21.)

he had not included copies of his previous submissions. (ECF No. 49 at 19.) Then in June, DePetro appealed Scally's denial on the grounds that copies of his Informal Grievance had not yet come back and this was the first answer he had received. (*Id.* at 20.) A month later, DePetro again responded that he had included a copy of the informal grievance with his First Level grievance, which was never responded to, "so per A.R. 740.03[(8)] sect. B [he had] moved on." (*Id.* at 21.)

It was not until June 2, 2022, that NDOC issued an official response denying DePetro's informal grievance on its merits because DePetro had seen a medical provider in January, recently filled an order for naproxen, and laboratory testing and x-rays had been ordered. (ECF No. 28 at 17.) Gutierrez then denied DePetro's Level 1 grievance on August 2, 2022, because he had been seen by a provider in May and his pain medications had been changed and ordered for a longer period. (*Id.* at 18.) Ten days later, Scally issued a final rejection of DePetro's Level 1 grievance for failure to include his Informal Level documents. (*Id.* at 19-20.)

DePetro brought this case on May 24, 2022. (ECF No. 1-1.) He later filed his second amended complaint naming Associate Warden J. Scally, AWP J. Williams, Medical Director B. Gutierrez, and Nurse Dennis Tamban as defendants. (ECF Nos. 1-1, 21 ("Complaint").) Both parties now move for summary judgment. (ECF Nos. 28, 40.)

## III.    MOTIONS FOR SUMMARY JUDGMENT

The Motions both pertain to DePetro's Eighth Amendment medical indifference claims, and Defendants additionally raise the issues of exhaustion and qualified immunity. (ECF Nos. 28, 40.) The Court will first address the issue of exhaustion, then turn to arguments on the merits. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). Due to remaining issues of fact, both Motions are denied as to all defendants, except Defendants' Motion is granted as to Plaintiff's Due Process claims.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that inmates cannot bring actions challenging prison conditions under federal law "until such administrative

1  remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion
2  requires that a grievant "use all steps the prison holds out, enabling the prison to reach
3  the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). However,
4  "[f]ailure to exhaust under the PLRA is 'an affirmative defense the defendant must plead
5  and prove.'" *Albino*, 747 F.3d at 1166 (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216
6  (2007)). In Nevada, NDOC's Administrative Regulation (AR) 740 governs the grievance
7  process for inmates. (ECF No. 40-1 ("AR 740").) *See also* NRS § 209.243.

8  Defendants allege three procedural defects in DePetro's November 2021
9  grievance: first, that the grievance was untimely; second, that DePetro raised multiple
10  issues in a single grievance; and third, that the December 25, 2021, incident cannot be
11  considered part of the grievance because it occurred after the grievance was submitted.
12  (ECF No. 44 at 8.) None of these arguments holds merit, as explained below.

13  **1.  Timeliness**

14  "[W]hen prison officials address the merits of a prisoner's grievance instead of
15  enforcing a procedural bar, the state's interests in administrative exhaustion have been
16  served." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016). Waivable procedural bars
17  include the timeliness of a grievance. *See Holden v. Nevada ex rel. Nev. Dep't of Corr.*,
18  No. 3:16-CV-00064-MMD-WGC, 2018 WL 4566253, at *9 (D. Nev. Sept. 24, 2018).
19  NDOC responded to the merits of the November 2021 grievance at the Informal Level
20  and Level 1 without ever raising its timeliness. (ECF No. 28 at 17-20.) The sole
21  procedural issue NDOC raised was that DePetro had failed to attach all proper
22  documentation to his Level 1 and 2 grievances. (*Id.* at 19; ECF No. 49 at 19-21.) Any
23  timeliness objections are thus waived, as NDOC "had the opportunity to address the
24  grievance and correct their own errors and an administrative record has been
25  developed." *Reyes*, 810 F.3d at 657.

26  **2.  Single-Issue Requirement**

27  NDOC similarly failed to enforce the procedural rule allowing them to reject a
28  grievance form if the inmate includes more than one grievance issue. (ECF No. 28 at

7

17-20.) Regardless of how many issues DePetro's grievance contained, NDOC's response on the merits waived any objections to a multi-issue grievance. *See Reyes*, 810 F.3d at 657.

### 3.   Incident on December 25, 2021

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010). NDOC's AR 740 required only that that grievances factually demonstrated a loss or harm and stated the action or remedy that would satisfy the inmate's claim. (ECF No. 40-1 at 4.) "Where, as here, a prison's regulations are incomplete as to the factual specificity required in an inmate's grievance, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp*, 623 F.3d at 824 (cleaned up); *see also Griffin*, 557 F.3d at 1120 (finding a grievance form provided little guidance as to what facts a grievance must include when it simply instructed inmates to briefly describe the complaint and a proposed resolution).

DePetro's multiple kites and grievances put NDOC officials on notice that he had been receiving inadequate medical care for his back pain. *See Sapp*, 623 F.3d at 824; *Gomez v. Winslow*, 177 F.Supp.2d 977, 982 (N.D. Cal. 2001). Each allegation in the Complaint concerns DePetro's efforts over multiple years to obtain treatment for chronic, severe back pain. These allegations do not set forth several discrete causes of action but rather are aspects of DePetro's medical care claim, and thus DePetro need not file multiple, successive grievances raising the same ongoing issue. *See Gomez*, 117 F.Supp.2d at 982; *Reed v. Wash. State Dep't of Corr.*, No. 3 :16-CV-05993-BHS-DWC, 2021 WL 8086628, at *11-13 (W.D. Wash. Apr. 16, 2021), *report and recommendation adopted in part, rejected in part*, No. C16-5993 BHS, 2022 WL 970148 (W.D. Wash. Mar. 31, 2022). Alleging that his back pain was inadequately treated again after filing the November 2021 grievance does not change the nature of DePetro's action nor does it present new claims that were not administratively exhausted. Instead, the incident on December 25, 2021, is an extreme example of the ongoing problem

raised in his grievance. All allegations in the Complaint are thus fairly encompassed by the medical care claim submitted in DePetro's grievance.

**B. Eighth Amendment Deliberate Indifference to Medical Needs**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotations and citation omitted). Prison officials violate the Eighth Amendment when they act with "deliberate indifference" to the serious medical needs of an inmate. *Id.* at 104-05. "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 176, 1082-83 (9th Cir. 2014).

**1.     Objective Component**

To meet the objective standard, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

DePetro has met this objective standard many times over. Failure to treat his condition could result in further significant injury—especially once he began experiencing numbness and tingling in his foot. (ECF No. 28 at 12 (noting that "sciatica can potentially cause permanent nerve damage" and recommending that patients

experiencing loss of feeling in the affected leg seek immediate medical attention).)[10] Even before his symptoms progressed that far, a reasonable doctor would have found DePetro's prolonged, severe, progressively worse back pain worthy of treatment. (*Id.* (recommending calling a doctor if a patient's sciatica "pain lasts longer than a week, is severe or becomes progressively worse").) Not only would a reasonable doctor recommend DePetro seek medical care, but HDSP medical staff *actually did* see DePetro, order diagnostic tests, and prescribe pain medications for his radiating back pain. *See Colwell*, 763 at 1067.

The record further establishes that DePetro's pain was chronic and substantial and affected his daily activities. *See id.* at 1066. DePetro began sending kites complaining of severe back pain that made it "hard to sleep" in August 2020. (ECF No. 28 at 22.) Though a medical record from December 2020 did not note any complaints about DePetro's back, just five days later DePetro sent another kite requesting analgesic balm for his "really bad" back pain. (ECF Nos. 28 at 24; 46-4 at 6 (sealed).) The next year, DePetro again complained of "excruciating pain" in his lower back and upper right leg that now made it "hard to sleep and walk." (*Id.* at 26.) DePetro had described the pain a few weeks prior as being so severe that it took his breath away "on some days for [weeks] at a time." (*Id.* at 25.) Another year later, DePetro's cellmate noted that, because of his back pain, DePetro had trouble walking, bending over, and cleaning himself. (ECF No. 49 at 35.) Then in April 2023, DePetro sent yet another kite complaining of escalated symptoms—this time, tingly and numb toes on his right foot. (ECF No. 28 at 27.) His cellmate at the time even noted that DePetro needed help with basic movements like sitting up in bed and getting off the toilet. (ECF No. 36 at 10.) DePetro's pain clearly was not "a trifling matter." *Colwell*, 763 F.3d at 1066 (noting that

---

[10]The Court takes judicial notice of information included in the Mayo Clinic's page on sciatica, which DePetro included as an exhibit with his Motion. (ECF No. 28 at 11-13). *See also* FED. R. EVID. 201. "Sciatica refers to pain that radiates along the path of the sciatic nerve, which branches from your lower back through your hips and buttocks and down each leg." (ECF No. 28 at 11.)

"a bump or scrape or tummy ache" are not serious medical needs).

Defendants argue that the Court should follow Ninth Circuit social security jurisprudence and require that DePetro provide "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." (ECF No. 44 at 11 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).) But Defendants have cited zero examples of this standard being applied in Eighth Amendment contexts in the Ninth Circuit, and even if the social security standard were to apply here (which the Court finds it does not), DePetro has met it. The x-ray of his spine revealed tiny marginal osteophytes—more commonly known as bone spurs.[11] (ECF No. 46-4 at 7.) Per the Mayo Clinic, bone spurs are one of the most common causes of sciatica, a medical term for pain that radiates from the lower spine down the back of the leg and can cause numbness and tingling in the affected leg or foot. (ECF No. 28 at 11-12.) These are symptoms repeatedly documented in DePetro's kites and medical charts. Thus, DePetro has established that his bone spurs could have caused lower back and leg pain and numbness in his toes. Whether the tiny bone spurs can "reasonably be expected to cause the severity of symptom [DePetro] has alleged" is immaterial under this test, given that it accounts for the "the highly subjective and idiosyncratic nature of pain and other such symptoms." *Smolen*, 80 F.3d at 1282.

### 2.    Deliberate Indifference

To satisfy the subjective deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). In short, plaintiffs must establish that the course of treatment they

---

[11]*See* FED. R. EVID. 201; *Bone Spurs (Osteophytes)*, CLEVELAND CLINIC, https://perma.cc/3FF8-DXWT.

1    were given was "medically unacceptable under the circumstances" and chosen "in
2    conscious disregard of an excessive risk to [their] health." *Colwell*, 763 F.3d at 1068;
3    *accord Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

4        DePetro alleges both acute indifference to his severe pain and long term
5    indifference via delayed grievance processing.

6                          **a.    Incident on December 25, 2021**

7        Both DePetro and an inmate in a neighboring cell have stated that Nurse
8    Tamban was called to DePetro's cell while he was immobilized on the ground in pain,
9    refused to enter DePetro's cell to examine him, dismissed DePetro's request for help,
10   and threw a container of ibuprofen at him. (ECF Nos. 21 at 4; 49 at 33-34.) Defendants
11   do not dispute these allegations. (ECF Nos. 40 at 3, 13; 44 at 3-4; 53.) *See also*
12   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). There is no evidence that
13   Tamban was otherwise involved in DePetro's medical care. While a finding that the
14   "defendant's neglect of a prisoner's condition was an isolated occurrence . . . ordinarily
15   militates against a finding of deliberate indifference," an "egregious" single failure
16   "strongly suggests that the defendant's actions were motivated by deliberate
17   indifference to the prisoner's medical needs." *McGuckin v. Smith*, 974 F.2d 1050, 1060-
18   61 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d
19   1133 (9th Cir. 1997) (internal quotations omitted).

20       Tamban's behavior could be considered egregious. DePetro told Tamban that he
21   was in excruciating pain and could not move, yet Tamban refused to enter DePetro's
22   open cell to examine him. (ECF Nos. 21 at 4; 49 at 33-34.) Technically, Tamban did
23   provide pain medication to DePetro. But overhand throwing medicine at a patient who
24   has been laying on the ground in pain for hours and telling him to "get used to it"
25   suggests animus towards him, which in turn supports the conclusion that Tamban acted
26   with deliberate indifference in failing to examine DePetro. *See Snow*, 681 F.3d at 987
27   ("Evidence of an improper motive can support a conclusion that a defendant acted with
28   deliberate indifference."). Such behavior could well be "medically unacceptable under

the circumstances," considering Defendants have provided no evidence to explain why Tamban, a nurse, refused to provide medical care beyond hurling pills at an incapacitated patient. *Colwell*, 763 F.3d at 1068. A reasonable jury could therefore find that Tamban was aware of, and disregarded, an excessive risk to DePetro's health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003).

Viewed in the light most favorable to Defendants, however, the evidence is not conclusive that Tamban acted with deliberate indifference. Material questions remain as to whether DePetro faced an excessive risk to his health, whether Tamban was aware of that risk, and what an appropriate medical response would be under these circumstances. Both Motions are thus denied as to whether Tamban violated the Eighth Amendment.

### b.    Grievance Processing Delays

DePetro alleges that Scally, Williams, and Gutierrez demonstrated deliberate indifference to his serious medical needs by responding to his grievances in an untimely manner and not scheduling medical appointments for him. (ECF No. 21 at 2, 4-5.) The Court interprets these claims as alleging delayed medical treatment. For DePetro's delayed treatment claim to be successful, he must show that the delay resulted in injury. *See Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The record clearly establishes that DePetro suffered from severe chronic back pain for several months while his grievance was being processed, "which is harm in and of itself, along with all of the other harms and dangers that flow from that." *Colwell*, 763 F.3d at 1068; *see also McGuckin*, 974 F.2d at 1062 (finding that suffering an "unnecessary continuation of his condition and pain caused [the plaintiff] 'harm' upon which a § 1983 claim can be based"); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989) (finding that a three-month delay in treatment created a genuine issue of material fact). While the harm to DePetro is clear, there is at least an issue of triable fact regarding causation.

As to Defendants' alleged deliberate indifference, a reasonable jury could find that the way Defendants addressed DePetro's grievance evinced knowledge and conscious disregard of his serious medical need. Viewing the evidence in the light most favorable to DePetro, his November 2021 grievance likely included the same information as his emergency grievance: that for over a year he had been experiencing "excruciating pain" in his lower right back and down his legs. (ECF No. 49 at 13.) Each of DePetro's grievance reviewers should have personally reviewed and responded to this grievance[12] and thus been aware of DePetro's condition. *See Colwell*, 763 F.3d at 1070; *Snow*, 681 F.3d at 989. And as evidenced in their grievance denials, Gutierrez and Williams also reviewed DePetro's medical records, which by February 2022 showed bone spurs and degenerative changes to his spine[13] and by May 2022 showed that he may qualify for back surgery and other additional treatments. (ECF Nos. 46-4 at 5-6 (sealed); 49 at 15-16.) Genuine issues of material fact thus remain regarding Defendants' subjective knowledge.

Any claims that Gutierrez, Scally, and Williams were not medical professionals and thus had no basis to order treatment are similarly unavailing. They all had authority to take remedial action to address DePetro's grievance by affording him proper medical care. (ECF No. 40-1 at 8.) *See Colwell*, 763 F.3d at 1065, 1069-70; *cf.* Mack v. Aranas, No. 217CV02239APGEJY, 2021 WL 1535331, at *3 (D. Nev. Apr. 16, 2021)) ("[M]erely denying a grievance without some decision-making authority or ability to resolve the

___

[12]There is some uncertainty as to what information each grievance reviewer had access to but viewing the evidence in the light most favorable to DePetro, a rational trier of fact could reasonably find that they were all aware of his situation. (ECF No. 49 at 15-21.)

[13]Defendants argue that DePetro's x-rays did not demonstrate a serious medical condition because they showed no injury to his back, citing numerous cases where normal x-rays undermined claims of deliberate indifference. (ECF No. 44 at 14.) While Defendants are correct that DePetro's x-ray does not show an acute injury, it did show bone spurs and degenerative changes. (ECF No. 46-4 at 6 (sealed).) Providers reviewing those x-rays diagnosed DePetro with degenerative joint disease and osteoarthritis in his spine, and even noted he may qualify for back surgery and other additional treatments. (*Id.* at 5; ECF No. 65 at 5.) This, at the very least, raises questions as to whether DePetro's x-ray was normal.

underlying issue grieved is not enough to establish personal participation.”). Unlike the defendant in *Peralta v. Dillard*, their roles were not “largely administrative.” 744 F.3d at 1086 (finding the reviewer of a second-level grievance had a “largely administrative” role because he was only expected to ensure that two other medical professionals had signed off on a reasonable course of treatment). Again, Williams and Gutierrez both independently reviewed DePetro’s claims and read his medical records. *Cf. id.* (finding no awareness of risk where a grievance reviewer did not independently review the plaintiff’s claims or read his chart). DePetro even reasserted on June 5, 2022, that “HDSP [had] failed to correct anything,” suggesting that the medical visits Defendants cited to were inadequate to address his grievance. (ECF No. 49 at 20.) But the three Defendants still failed to take any action to prevent further harm. Instead, they waited several additional months—until after DePetro had already been seen by medical staff—to deny his grievance. (*Id.* at 12, 14-15 (giving NDOC 45 days to respond to informal and First Level grievances and 60 days to respond to Second Level grievances).) Several factual questions remain, and as a result, both Motions are denied as to whether Gutierrez, Scally, or Williams acted with deliberate indifference in delaying DePetro’s medical treatment.

### C. Due Process Claims[14]

“The right of meaningful access to the courts extends to established prison grievance procedures” because exhaustion of the grievance process is a prerequisite for suits challenging conditions of confinement. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001); *see also* 42 U.S.C. § 1997e(a). Despite having a constitutional right to file grievances, “inmates lack a separate constitutional entitlement to a specific prison grievance procedure.” *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). There is no dispute that the responses to DePetro’s grievances were untimely under AR 740.

---

[14]The Court interprets DePetro’s Complaint as also raising a due process concern.

However, DePetro has not provided evidence that the delayed grievance responses frustrated or impeded a nonfrivolous legal claim, such as by barring his access to a remedy or causing him to miss a filing deadline. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011). Thus, DePetro's claims against Scally, Wiliams, and Gutierrez regarding the timeliness with which they processed his grievances are not actionable under the Due Process Clause.

### D. Qualified Immunity

Defendants further argue that they are entitled to qualified immunity. When determining whether a state official is entitled to qualified immunity at the summary judgment stage, courts consider "(1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was clearly established at the time of the violation." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S.Ct. 711 (2021) (citation and quotation marks omitted). Factual circumstances in previous cases need not be "fundamentally similar or materially similar" for state officials to be on notice that their conduct violates established law. *Id.* at 680 (cleaned up).

As discussed above, the Court has found that there are genuine issues of material fact regarding whether Defendants were deliberately indifferent to DePetro's medical needs. These remaining factual questions also bear on whether they violated clearly established rights and thus are entitled to qualified immunity. If DePetro's version of the facts prevails, there is a reasonable likelihood that Tamban is not entitled to qualified immunity. *See Lolli*, 351 F.3d at 421 (holding that a jury could reasonably infer, where an inmate exhibited and alerted officers to symptoms associated with his alleged harm and requested assistance, those officers knew of the risk of harm faced if the inmate was denied medical attention); *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (finding officers were subjectively aware of plaintiffs' serious medical needs due in part to their "repeated requests for [medical] attention" and were deliberately

1    indifferent in delaying their treatment for a painful, non-life threatening condition for four

2    hours); *Sandoval*, 985 F.3d at 680-81 (holding that a nurse who "made essentially no

3    effort" to determine why the plaintiff was suffering from his reported symptoms,

4    abandoned the plaintiff, and failed to pass along any information to the nurses who

5    relieved him was not entitled to qualified immunity). The same applies to Gutierrez,

6    Scally, and Williams. *See Stewart*, 32 F.4th at 1195 ("At some point 'wait and see'

7    becomes deny and delay."); *Snow*, 681 F.3d at 988 (holding prison officials violate the

8    constitution when they persist in a treatment known to be ineffective); *Colwell*, 763 F.3d

9    at 1070-71 (finding that denying a grievance in the face of a recommendation for further

10   treatment could constitute an Eighth Amendment violation). Defendants' motion is thus

11   denied as to qualified immunity. *See Lolli*, 351 F.3d at 421-22; *Clement*, 298 F.3d at

12   906.

13   **IV.    MOTION FOR LEAVE TO FILE**

14         DePetro filed two motions for leave to file new exhibits in support of his Motion, to

15   which Defendants filed a notice of non-opposition.[15] (ECF Nos. 36, 64, 65, 68.) As

16   DePetro proceeds *pro se*, the exhibits are relevant to the Motions, and Defendants do

17   not object to their filing, the Court grants DePetro's motions for leave to file and

18   considers these exhibits in resolving the Motions. *See Fed. Trade Comm'n v. Consumer*

19   *Def., LLC*, No. 2:18-CV-30 JCM (PAL), 2019 WL 1916193, at *5 (D. Nev. Apr. 30,

20   2019).

21   **V.     MOTIONS TO SEAL**

22         In the Ninth Circuit, there is "a strong presumption in favor of access to court

23   records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

24   To overcome this presumption, a party must articulate "compelling reasons" justifying

25   nondisclosure. *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). In

26

27         [15]Defendants affirmatively stated their non-opposition to only DePetro's second
     motion for leave to file. (ECF No. 68.) But the Court reads Defendants' silence on his
28   first motion for leave to file as implied non-opposition.

1   two identical motions, Defendants seek to file under seal five exhibits containing

2   sensitive medical information about DePetro. (ECF Nos. 41 at 3; 42-1–42-5 (sealed); 44

3   at 3; 45-1–45-5 (sealed).)

4       There are no compelling reasons justifying the non-disclosure of Exhibit C, which

5   contains several kites that DePetro has already publicly filed in this docket. (ECF Nos.

6   21 at 22-25; 42-2; 45-2.) The only kite which is not already in the public record simply

7   reiterates what the six public kites already say: that DePetro's back pain was

8   "excruciating" and radiating down his leg, and that this was the fourth or fifth kite he had

9   sent regarding this issue. (ECF No. 42-2 at 2; 45-2 at 2.) Sealing information that has

10  already been disclosed would do little to protect its confidentiality. Defendants' motion to

11  seal is therefore denied as to Exhibit C.

12      All other exhibits filed under seal contain extensive personal medical information

13  about DePetro, much of which is irrelevant to the matter at hand. (ECF Nos. 42-1, 42-3–

14  42-5, 45-1, 45-3–45-5 (sealed).) The Court thus grants Defendants' motions to seal

15  Exhibits B, E, F, and G given the consensus amongst Ninth Circuit district courts[16] that

16  "the need to protect medical privacy qualifies as a 'compelling reason' for sealing

17  records." *Steven City Broomfield v. Aranas*, No. 17-CV-00683-MMD-WGC, 2020 WL

18  2549945, at *2 (D. Nev. May 19, 2020).

19  **VI.   CONCLUSION**

20      The Court notes that the parties made several arguments and cited several

21  cases not discussed above. The Court has reviewed these arguments and cases and

22  determines that they do not warrant discussion as they do not affect the outcome of the

23

24      [16]*See Paez v. Akima Support Operations LLC*, No. 2:21-CV-01920-DAD-AC,
    2022 WL 14129916, at *1 (E.D. Cal. Oct. 24, 2022); *Pratt v. Gamboa*, No. 17-CV-
25  04375-LHK, 2020 WL 8992141, at *2 (N.D. Cal. May 22, 2020); *Johnsen v. Tambe*, No.
    19-141-TSZ-MLP, 2019 WL 4014256, at *2 (W.D. Wash. Aug. 26, 2019); *Gary v. Unum*
26  *Life Ins. Co. of Am.*, No. 3:17-CV-01414-HZ, 2018 WL 1811470, at *3 (D. Or. Apr. 17,
    2018); *Bloss v. Twin Falls Cnty.*, No. 1:15-CV-00467-BLW, 2017 WL 3659164, at *7 (D.
27  Idaho Aug. 24, 2017); *Abbey v. Haw. Emps. Mut. Ins. Co.*, No. CIV. 09-000545 SOM,
    2010 WL 4715793, at *1 (D. Haw. Nov. 15, 2010); *Lombardi v. TriWest Healthcare All.*
28  *Corp.*, No. CV-08-02381-PHX-FJM, 2009 WL 1212170, at *1 (D. Ariz. May 4, 2009).

1    Motion.

2         It is therefore ordered that Plaintiff's motion for summary judgment (ECF No. 28)

3    is denied.

4         It is further ordered that Defendants' motion for summary judgment (ECF No. 40)

5    is granted in part and denied in part. It is granted only as to Plaintiff's Due Process

6    claims; it is otherwise denied.

7         It is further ordered that Plaintiff's motions for leave to file additional exhibits

8    (ECF Nos. 36, 64, 65) are granted.

9         It is further ordered that Defendants' motions to seal (ECF Nos. 41, 44) are

10   granted for Exhibits B, E, F, and G and denied for Exhibit C.

11        The Clerk of Court is directed to unseal Exhibit C. (ECF Nos. 42-2, 46-2.)

12        DATED THIS 26th Day of January 2024.

13

14

15   _____
     MIRANDA M. DU
16   CHIEF UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28